IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 03-CR-23

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SCOTT LEE KIMBALL,

    Defendant.

_____

**SEALED REPORTER'S TRANSCRIPT**
(Hearing on Change of Plea)

_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 10:00 a.m., on the 10th day of March, 2003, in Courtroom 12, United States Courthouse, Denver, Colorado.

**APPEARANCES**

    JOSEPH URBANIAK, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

    KENNETH EICHNER, Attorney at Law, 1776 Lincoln Street, Suite 1010, Denver, Colorado, 80203, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 1929 Stout Street, P.O. Box 3563, Denver, Colorado, 80294, (303) 629-9285

1        (In open court at 10:00.)

2            THE COURT:  Are we ready to proceed with Case

3    No. 03-CR-23, United States of America vs. Scott Lee Kimball?

4            MR. URBANIAK:  We are, your Honor.

5            THE COURT:  Would you please enter your appearances

6    for the record.

7            MR. URBANIAK:  Good morning, your Honor.  Joseph T.

8    Urbaniak, Jr., Assistant United States Attorney, appearing on

9    behalf the Government.

10           MR. EICHNER:  Good morning, your Honor.  Kenneth

11   Eichner on behalf of Mr. Kimball, who is present today.

12           I believe we would have the joint motion to seal in

13   case.  I apologize for not filing it in writing.

14           THE COURT:  And the grounds?

15           MR. EICHNER:  Your Honor, Mr. Kimball has been a

16   cooperating witness for the FBI and the U.S. Attorney's office

17   in an another district in a very confidential matter.

18           All his proceedings up to now have been sealed.  The

19   case involves the planned assassination of a federal judge and

20   an assistant U.S. attorney.  I don't know all the facts, but

21   he's working very closely with them; and we'd like to continue

22   to keep all of the matters sealed.  And although this case

23   doesn't involve those facts, there are references in terms that

24   there are certain things I'll be asking for in sentencing and

25   timing and continuances and so on and so forth.  And now that

1    I've put the basis on the record, I think it's best for the

2    Department of Justice to keep the items, the matters sealed.

3              *THE COURT:*  Response?

4              *MR. URBANIAK:*  I don't oppose that, your Honor.  There

5    is some basis for it.  I'm aware of what he was doing in

6    Alaska.  I think two people pled guilty in that matter.  And

7    there are certain other things the FBI wants to work with him

8    on which may be the subject of a motion to the Court to allow

9    that to happen further.

10             *THE COURT:*  All right.  It's not my practice to seal

11   entire matters.  And in reflection upon this case, there have

12   been certain portions of this record that have been sealed,

13   particularly minute orders.  I'm having a little bit of

14   difficulty understanding, having reviewed the plea agreement

15   here, what the danger is.

16             Counsel, can you explain?

17             *MR. EICHNER:*  My -- the only danger I could seeing is

18   if someone ordered the transcript or I asked the Court for an

19   extended period of time before sentencing or additional time to

20   report to Mr. Merlo and the Court asked me why and I reiterate

21   these things.  And if someone were to order the transcript,

22   then his cooperation with the Department of Justice would

23   become a public record and might potentially compromise either

24   his safety or the Department of Justice's case against the

25   defendant in another district.

1          *THE COURT:*  All right.  Then it will be the order of

2     the Court that this proceeding, the plea agreement, the

3     statement, and the transcript, as well as the minutes of

4     proceeding will be sealed.  That is not, however, a prospective

5     sealing of all remaining matters in this case.  A separate

6     motion will have to be made with regard to that.

7          In addition, Ms. Bush, would you please lock the doors

8     to the courtroom so that we don't have anyone join us

9     inadvertently.

10          This case is before the Court for a change in the

11     defendant's plea, for rearraignment pursuant to Rule 10, and

12     for consideration and advisement with regard to the parties'

13     plea agreement in accordance with Rule 11 of the Federal Rules

14     of Criminal Procedure.

15          The record reflects that the defendant was charged by

16     information filed on February 27, 2002, was previously

17     arraigned, at which time he entered a plea of not guilty.

18          I ask that the defendant and counsel please approach

19     the lectern.

20          I understand now that the defendant desires to

21     withdraw his prior plea in accordance with the written plea

22     agreement that has been marked as Court's Exhibit 1.  Is that

23     correct?

24          *THE DEFENDANT:*  Yes, your Honor.

25          *THE COURT:*  Would you please rearraign the defendant.

1          MR. URBANIAK:  Sir, is your name Scott Lee Kimball,

2    also known as Bret Kimball?

3          THE DEFENDANT:  Yes, sir.

4          MR. URBANIAK:  And you're the same person who is

5    charged in the indictment in criminal Case No. 03-CR-0023-MK?

6          THE DEFENDANT:  Yes, sir.

7          MR. URBANIAK:  Excuse me.  I said indictment.  It's an

8    information.

9          Do you recall having filed a waiver of indictment in

10   Alaska?

11         THE DEFENDANT:  Yes, I do.

12         MR. URBANIAK:  And you were represented by an attorney

13   at the time you did that?

14         THE DEFENDANT:  Yes, I did.

15         MR. URBANIAK:  His name was Rex Butler.

16         THE DEFENDANT:  That is correct, too.

17         MR. URBANIAK:  With respect to this information, which

18   contains two counts, both of which I'll read -- Count 1 reads

19   as follows:

20         "On or about November 5, 2001, in the District of

21   Alaska, the defendant, Scott Lee Kimball, did knowingly make,

22   utter, and possess a counterfeited security; namely, a

23   $4,287.95 check made payable to 'Bret Kimball.'  The

24   counterfeited security was of Fishermen's Finest Incorporated,

25   an organization as that term is defined in Title 18 United

1  States Code Section 513(c)(4).  Scott Lee Kimball did so with

2  the intent to deceive another organization; namely, Wells Fargo

3  Bank, all of which is contrary to and in violation of Title 18

4  United States Code Section 513(a)."

5          Sir, to that count, how do you plead, guilty or not

6  guilty?

7          *THE DEFENDANT:*  Guilty.

8          *MR. URBANIAK:*  Count 2:  "On or about November 6,

9  2001, in the District of Alaska, the defendant, Scott Lee

10  Kimball, did knowingly make, utter, and possess a counterfeited

11  security, namely a $4,000 check payable -- made payable to

12  'Bret Kimball'.  The counterfeited security was a Fishermen's

13  Finest Incorporated, an organization as that term is defined in

14  18 U.S.C. 513(c)(4).  Scott Lee Kimball did so with the intent

15  to deceive another organization; namely, Wells Fargo Bank, all

16  of which is contrary to and in violation of Title 18 United

17  States Code Section 513(a)."

18          Sir, how do you plead to that count, guilty or not

19  guilty.

20          *THE DEFENDANT:*  Guilty, sir.

21          *MR. URBANIAK:*  Thank you.

22          *THE COURT:*  Mr. Kimball, as of this moment, you are

23  not bound by your pleas of guilty.  Indeed, you are not bound

24  by these pleas until I accept them.  You can change your mind

25  at any point during this hearing before I accept your plea.

1          In order to accept your plea, I must be sure that you

2   understand the charges brought against you; that you understand

3   your choices and the consequences flowing from those choices;

4   that your decision to plead guilty is voluntary and you have

5   not been pressured into the decision and that there is a

6   factual basis for the plea.

7          Throughout this hearing, I want you to let me know if

8   you do not understand or if you have any questions.  If you

9   cannot hear me or you do not understand what I say or ask, tell

10  me.

11         *THE DEFENDANT:*  Yes, your Honor.

12         *THE COURT:*  If you have any questions about what I

13  have said or what it means, ask me.

14         *THE DEFENDANT:*  Yes, your Honor.

15         *THE COURT:*  If you want to consult with your attorney

16  at any time, we'll take a brief recess so you can confer

17  privately.

18         Before I accept your plea, I'm going to ask you a

19  number of questions.  The questions are not intended to trap,

20  embarrass, insult, or offend you.  They are important, and it

21  is important that you answer the questions honestly and

22  completely.  The answers you give are important, and you should

23  understand that they can be used against you if there is a case

24  brought against you for false statement or perjury.

25         Just like a witness, you must take an oath promising

1   to tell the truth.

2           Do you want to proceed?

3           *THE DEFENDANT:*  Yes, your Honor.

4           *THE COURT:*  Ms. Bush, please administer the oath.

5       (Defendant sworn.)

6                           **EXAMINATION**

7   *BY THE COURT:*

8   *Q.*  Mr. Kimball, how old are you?

9   *A.*  36 years old, your Honor.

10  *Q.*  What level of school did you complete?

11  *A.*  I completed 12 years of school, your Honor.

12  *Q.*  Do you have any difficulty reading or writing?

13  *A.*  No.

14  *Q.*  Within the last 24 hours, have you taken any medication or

15  used any drug or alcohol?

16  *A.*  I take Paxil on a daily basis, and last night I had a Crown

17  and Coke.

18  *Q.*  All right.  Are you suffering any effects from the Crown

19  and Coke this morning?

20  *A.*  Absolutely not.

21  *Q.*  What are the sides effects of Paxil?

22  *A.*  There is actually none with me.

23  *Q.*  To the best of your knowledge, have you been diagnosed or

24  treated for any form of mental illness or emotional disability?

25  *A.*  Yes, I have been; but that's under control with the Paxil.

1   Q.  Are you suffering any side effects or symptoms that are not

2   treated by the Paxil today?

3   A.  No, your Honor.

4   Q.  Is there anything about the way you feel today physically

5   or emotionally that prevents you from understanding what is

6   happening now?

7   A.  No, there is not.

8   Q.  Have you read and do understand the charges against you in

9   the information?

10  A.  Yes, I have; and yes, I do.

11  Q.  Have you discussed these charges with your attorney?

12  A.  Yes, I have, your Honor.

13  Q.  Has he answered all of your questions?

14  A.  Yes, he has.

15  Q.  Would you turn to Court Exhibit 1, please.

16          Have you read this document?

17  A.  Your Honor, I have.

18  Q.  Was your lawyer with you when you read it?

19  A.  Yes, he was.

20  Q.  Did you discuss it with him?

21  A.  Yes, we did.

22  Q.  Did you ask him all of the questions that you have?

23  A.  Yes, I did.

24  Q.  Now, it's got a lot of legal language in this document.

25  Did you understand it all?

1   *A.  Most of it.  And if there was something I was confused*

2   *with, I did ask my attorney.*

3   *Q.  You think you understand it now?*

4   *A.  Yes, your Honor.*

5   *Q.  Did you sign this document?*

6   *A.  Yes, I did.*

7   *Q.  Is that your signature on the last page?*

8   *A.  Yes, is it.*

9   *Q.  Does it reflect all of your agreement with the Government?*

10  *A.  Yes, your Honor.*

11  *Q.  Do you have any questions about what Exhibit 1 says?*

12  *A.  No, I do not.*

13          *THE COURT:*  Mr. Eichner, does Exhibit 1 also bear your

14  signature?

15          *MR. EICHNER:*  It does, your Honor.

16          *THE COURT:*  Did you review the plea agreement with

17  Mr. Kimball?

18          *MR. EICHNER:*  I did, in fact.

19          *THE COURT:*  Did you answer all of his questions?

20          *MR. EICHNER:*  I did, your Honor.

21          *THE COURT:*  Do you believe that Mr. Kimball fully

22  understands the contents of Exhibit 1?

23          *MR. EICHNER:*  I do.

24          *THE COURT:*  Have you reviewed the discovery in this

25  case?

1          MR. EICHNER:  Yes, I have.

2          THE COURT:  Does it comport with the facts stated in

3    Exhibit 1?

4          MR. EICHNER:  It does.

5          THE COURT:  Mr. -- I'm going to say this wrong.

6    Urbaniak?  Is that correct?

7          MR. URBANIAK:  That's right, your Honor.

8          THE COURT:  Oh, I thank you.

9          Mr. Urbaniak, does this Exhibit 1 also bear your

10   signature?

11         MR. URBANIAK:  It does, your Honor.

12         THE COURT:  Thank you.

13   BY THE COURT:

14   Q.  Mr. Kimball, in Exhibit 1, there is a statement of the

15   facts which the Government believes it could prove if this

16   matter went to trial.  I'm going to summarize those facts.

17   A.  Yes, your Honor.

18   Q.  Please listen closely, because at the close of my summary,

19   I'm going to ask you if that's what happened.

20   A.  Yes, your Honor.

21   Q.  On November 7, 2001, an employee of Wells Fargo Bank in

22   Cordova, Alaska, reported to the police officers of the

23   Cordova, Alaska, Police Department that Bret Kimball deposited

24   two checks into his checking account at the Wells Fargo Bank.

25   These two checks were written on the account of a business

1    known as Fishermen's Finest, which account was at a branch of

2    the U.S. Bank located in Seattle, Washington.  One of the

3    checks deposited on November 5, 2001, was in the amount of

4    $4,287.95 made payable to Bret Kimball.  The other check was

5    deposited on November 6, 2001, in the amount of $4,000, also

6    made payable to Bret Kimball.

7            On November 7, 2001, Bret Kimball wrote and cashed a

8    check for cash in the amount of $7,500 at the Wells Fargo Bank

9    in Cordova, Alaska.

10           Those two checks, the one deposited on November 5,

11   2001, and the one deposited on November 6, 2001, were forged by

12   you.  You deposited them in the Wells Fargo Bank in Cordova,

13   and you wrote the check for and received the $7,500 in cash

14   based upon the deposit.

15           Is that what happened?

16   *A.*  Yes, your Honor.

17   *Q.*  Thank you.

18           Violation of 18 U.S.C. Section 513(a) can result in

19   imprisonment up to 10 years, a fine of up for $250,000, or

20   both, followed by three years of supervised release.  And

21   conviction requires $100 special assessment fee plus

22   restitution.

23           The actual sentence that will be imposed in this case

24   is subject to application of an elaborate set of sentencing

25   guidelines which determine a range in which the sentence can be

 1   imposed.   Outside of that range, I can depart upward or

 2   downward for particular reasons.

 3         The guidelines take into account not only the facts

 4   that are stated in your plea agreement but your past history,

 5   cooperation, and other factors.

 6         Your attorney and the Government's attorney have

 7   estimated the range they believe will apply under the

 8   sentencing guidelines, but you need to know this is just their

 9   best guess.   And ultimately, it is I who will determine your

10   sentence at a sentencing hearing about ten weeks from now.

11         In doing so, I will consider the presentence report

12   that is prepared by the probation department of the court.

13   Before the sentencing hearing, the probation officer will

14   contact you and talk with you and gather information that

15   affects the penalty to be imposed.   Please do not be confused

16   by the designation of the officer as a "probation officer."

17   That doesn't mean that probation is an option in this case.

18         You will have the opportunity with your lawyer to

19   review the probation officer's report; and you, as well as the

20   Government, will be able to make statements at the time of

21   sentencing.

22         Do you understand the sentence that can be imposed in

23   this case?

24   *A.*   I do, your Honor.

25   *Q.*   Do you understand that the sentence I impose may be more

1    severe than what is reflected in the agreement?

2    *A.*   I do, your Honor.

3    *Q.*   Do you understand that even if the sentence I impose is

4    more than what is stated in the agreement, if I accept your

5    plea today, you cannot later change your mind and withdraw your

6    plea?

7    *A.*   I understand that, your Honor.

8    *Q.*   You understand that the charge you're pleading guilty for

9    is a felony?

10   *A.*   I do.

11   *Q.*   If I accept this plea, do you understand this may affect

12   your civil rights, your right to vote, hold office, serve on a

13   jury, or possess a firearm?

14   *A.*   I understand, your Honor.

15   *Q.*   Do you have any questions?

16   *A.*   No, your Honor.

17   *Q.*   Please turn to Court Exhibit 2.

18          Have you read this document?

19   *A.*   Your Honor, yes, I have.

20   *Q.*   Did you discuss your rights as outlined in this document

21   with your attorney?

22   *A.*   Yes, I have.

23   *Q.*   Did you sign it?

24   *A.*   Yes, I did.

25   *Q.*   Do you have any questions?

1    *A.*  None, your Honor.

2    *Q.*  Now, I'm going to briefly review these rights, because

3    these are constitutional rights and you are waiving these

4    rights.  These are important rights that you would be accorded

5    if you did not enter your plea of guilty today.

6         If I do not accept your plea or if you did not make a

7    plea of guilty, you would be entitled to a jury trial on the

8    charges brought against you.  That jury trial would occur in

9    this courtroom.  A jury of 12 would sit in that jury box.  And

10   in selecting that jury of 12, there would be a number of people

11   who were called.  You and your attorney would get to object to

12   any that you believed would not be fair and impartial or would

13   not apply the law as I instructed them.

14        In addition, you and the Government would get to

15   object to those people who you did not want to have on the

16   jury, a certain number of them, for no reason stated at all.

17   You could excuse up to 10 people without any reason being

18   stated, and the Government could excuse up to six people.

19        The remaining 12 people would serve as a jury; and

20   they would take an oath to consider only the evidence presented

21   in this courtroom and to apply the law as I instructed them.

22        They would have to reach a unanimous decision based

23   upon the evidence that was presented in this courtroom in order

24   to convict you.  And if any one of them had a reasonable doubt

25   as to your guilt you, could not be convicted.

1          You would have the right to remain silent during the

2     entirety of the trial.  Your attorney would be able to

3     challenge the evidence produced, but it would be up to the

4     Government to prove the case.  You would not have to prove

5     anything.

6          On the other hand, you could testify and present

7     evidence, if you chose to.  Indeed, I would even compel

8     witnesses to come forward and testify on your behalf if they

9     didn't want to attend the trial.

10         You are entitled to be represented by an attorney

11    during the entire process.  And even though your attorney has

12    counselled you with regard to this plea agreement, if you

13    choose not to go forward with this plea agreement, you would

14    nonetheless be represented at trial by counsel.

15         Now, none of this will happen if you proceed with your

16    plea of guilty.  Do you understand that?

17    *A.*  Your Honor, I completely understand.

18    *Q.*  Has anybody, family, friends, people at jail -- well,

19    you're not in jail right now -- your attorney, pressured you to

20    make this plea today?

21    *A.*  No, they have not, your Honor.

22    *Q.*  Has anyone promised you something that is not in the plea

23    agreement?

24         *MR. EICHNER:*  Your Honor, may I address that?

25         *THE COURT:*  Yes.

1          *MR. EICHNER:*  My client -- his only concern was in the

2     amount of restitution.  I told him there will come a time when

3     someone from United States probation, in this case, Mr. Merlo,

4     during his presentence investigative report would put in the

5     amount of restitution that they think is owed.

6          It is my client's position that he owes no restitution

7     because money was seized, actually more than what was owed; and

8     he wanted me to mention that to the Court.

9          He also asked me what the Court might impose in terms

10    of a fine.  And I said we will not know that until the time of

11    sentencing, and there are some statutory-ordered penalties like

12    the $100 fine.

13         Those were the only two things he asked me.

14    Otherwise, I believe his plea, of course, is knowing,

15    intelligent, and voluntary.

16         Thank you, your Honor.

17         *THE COURT:*  Thank you.

18    *BY THE COURT:*

19    *Q.*  With regard to the question, Mr. Kimball, that you raised

20    as to the amount of restitution, restitution is determined at

21    the time of sentencing.  As I indicated, both you and your

22    attorney and the Government will have an opportunity to address

23    that issue, both in response to the presentence report that is

24    filed and also at the time of the hearing.

25         Do you think you've had enough time to review,

1  consider, and discuss this plea agreement?

2  *A.*  Yes, I do.

3  *Q.*  Now, you've been represented by Mr. Eichner during the

4  course of this case.  Are you satisfied with him as your

5  attorney?

6  *A.*  Very much so.

7  *Q.*  Do you have any concerns, complaints, or criticisms about

8  the legal services you've received?

9  *A.*  No, I do not.

10  *Q.*  Do you want to ask him any questions?

11  *A.*  No, I do not.

12  *Q.*  Do you have any questions for me?

13  *A.*  Not at this time, your Honor.

14  *Q.*  Well, now is the time to finalize your decision.  This plea

15  agreement, the one you and I have been discussing:  Do you want

16  to proceed with it?

17  *A.*  Your Honor, I do.

18  *Q.*  Do you still want to plead guilty to Count No. 1,

19  understanding that Count No. 2 will be dismissed at the time

20  of --

21          *MR. EICHNER:*  I don't think it's going to be

22  dismissed.  He is in fact pleading to Counts 1 and 2.

23          *THE COURT:*  And 2.  All right.  Thank you.

24  *BY THE COURT:*

25  *Q.*  Do you still want to plead guilty to both counts?

1   *A.*   Your Honor, yes, I do.

2            *THE COURT:*   Counsel, any reason not to accept the plea

3   agreement?

4            *MR. EICHNER:*   None, your Honor.

5            *MR. URBANIAK:*   No, your Honor.

6            *THE COURT:*   Do you desire to supplement the record at

7   all?

8            *MR. EICHNER:*   No, your Honor.

9            *MR. URBANIAK:*   No, your Honor.

10           *THE COURT:*   Thank you.

11           Then in the matter of the United States of America vs.

12  Scott Lee Kimball, also known as Bret Kimball, I hereby find

13  that the defendant is fully competent to enter an informed

14  plea.  The defendant has been represented through the course of

15  this case and proceeding; and he has no objection, criticism,

16  or complaint as to the representation he has received.  He is

17  aware of the nature of the charges against him and the effects

18  and consequences of the plea, including fundamental rights that

19  are waived in making this plea.

20           He understands the penalty imposed by the Court may

21  exceed that which is recommended in the plea agreement.  His

22  plea of guilty is voluntary and knowingly made.  The charge and

23  the plea are supported by an independent basis in fact.

24           Court Exhibit 1 and 2 are therefore received, and it

25  is ordered that the plea as made in open court today is

1   accepted and the defendant is adjudged guilty of violation of

2   18 U.S.C. Section 513(a).

3          The probation department shall conduct a presentence

4   investigation and submit a presentence report as required by

5   Rule 32.

6          Is 10 weeks adequate time to prepare and submit that

7   report?

8          *THE PROBATION OFFICER:*  Yes, your Honor, I believe it

9   will be.

10          *THE COURT:*  Thank you.

11          Defendant, with the assistance of counsel, immediately

12   after this hearing or as soon as practicable, shall make

13   arrangements to participate in the presentence investigation

14   and shall cooperate with the probation department.

15          Counsel, do you have your calendars available for the

16   sentencing hearing setting?

17          *MR. URBANIAK:*  I do, your Honor.

18          *MR. EICHNER:*  I do your Honor.

19          Before the Court sets that date, I would, if at all

20   possible -- I would ask for a date as far out as possible.  As

21   I said, the defendant is cooperating with the FBI -- now that

22   it's sealed, I'll add this -- on not one case but two.  One

23   involved the death of an assistant U.S. attorney, and the other

24   was a murder-for-hire case, and I believe in the U.S.

25   Attorney's office up in Seattle, against a federal judge and an

1   assistant U.S. attorney.  And he's literally -- As soon as he

2   leaves here, he will be accompanied by an FBI agent starting

3   tomorrow -- he's usually here -- up in Seattle.  So it's going

4   to take some time.  Or if the Court wants to set the date,

5   I'll --

6            THE COURT:  Well, how long do you think you need?

7            MR. EICHNER:  Court's indulgence.

8       (Discussion off the record between Mr. Eichner and

9   defendant.)

10           MR. EICHNER:  If it pleases the Court, July or August.

11           THE COURT:  Response?

12           MR. URBANIAK:  I have no objection to that, your

13   Honor.

14           THE COURT:  Your options are either August 25 or

15   July 14.

16           MR. EICHNER:  Thank you, kindly.  We would select

17   July 14.

18           THE COURT:  Does that work for the Government?

19           MR. URBANIAK:  That's fine, your Honor.

20           THE COURT:  All right.  The sentencing will be

21   conducted at 11:00 a.m. on July 14, 2003.

22           MR. EICHNER:  Your Honor, I will also instruct

23   Mr. Kimball to give Mr. Merlo his new address and his cell

24   phone and the name and cell phone of the FBI agent so he will

25   also be in reachable with Mr. Merlo.

 1          THE COURT:  Thank you.

 2          MR. URBANIAK:  Your Honor, that brings up a matter.

 3   Mr. Eichner has suggested that the defendant is going somewhere

 4   to cooperate.  Would the Court require a motion for that, or

 5   has the Court heard enough about what he's doing?

 6          THE COURT:  Well, I think there needs to be a motion

 7   made.  You can make it orally.

 8          MR. URBANIAK:  I would move the Court to allow the

 9   defendant, Scott Kimball, to cooperate with law enforcement

10   authorities based on what the Court has heard so far, in that

11   is there is an ongoing investigation concerning the death of an

12   assistant United States attorney in Seattle, Washington.

13   Happened about a year and a half ago or so, as I recall.  And

14   Mr. Kimball has indicated to authorities that he knows

15   something about that, and they're trying to -- to confirm that

16   with him.  There is a special assistant United States attorney

17   who is on leave from a university who is the special prosecutor

18   in that matter, as well as some state prosecutors; and it's a

19   matter important to the Department of Justice.

20          He has previously given information which has led to

21   the conviction, I believe, on a plea of guilty of two people

22   for the putting a contract out on a federal judge and assistant

23   United States attorney in Alaska.  And he's come about these

24   matters to my understanding because he was in jail pending

25   charges while these other people were in there with him.  And

1   that's how he knows what -- what he does.

2          THE COURT:  Thank you.

3          I assume there is no objection.

4          MR. EICHNER:  None.

5          THE COURT:  Motion granted.

6          Do we have a trial set in this case?

7          MR. EICHNER:  Not yet, your Honor.

8          THE COURT:  Then there is not one to vacate.

9          All right.  Any change in conditions of release other

10  than the notation that has just been made by Government counsel

11  with regard to cooperation?

12          MR. URBANIAK:  No, your Honor.

13          THE COURT:  Any further business by the Government or

14  defendant?

15          MR. URBANIAK:  No, your Honor, thank you.

16          MR. EICHNER:  Nothing on behalf of Mr. Kimball.

17          THE COURT:  Thank you very much.  That will conclude

18  this matter.

19          MR. EICHNER:  Thank you, your Honor.

20          THE DEFENDANT:  Thank you, your Honor.

21      (Recess at 11:04 a.m.)

22                              *   *   *   *   *

23

24

25

1          **REPORTER'S CERTIFICATE**

2          I certify that the foregoing is a correct transcript from

3     the record of proceedings in the above-entitled matter.  Dated

4     at Denver, Colorado, this 2nd day of May, 2008.

5

6                                          *S/Paul A. Zuckerman*
                                           Paul A. Zuckerman
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25