```
                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLORADO

Criminal Action No. 03-CR-23

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

SCOTT LEE KIMBALL,

     Defendant.
_____

                    SEALED REPORTER'S TRANSCRIPT
        (Continued Hearing on Motion Re Supervised Release)
_____
```

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 8:05 a.m., on the 17th day of November, 2004, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

WILLIAM TAYLOR, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

KENNETH EICHNER, Attorney at Law, 1776 Lincoln Street, Suite 1010, Denver, Colorado, 80203, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 1929 Stout Street, P.O. Box 3563, Denver, Colorado, 80294, (303) 629-9285

1       (In open court at 8:05 a.m.)

2       *THE COURT:* Please be seated. Good morning.

3       The Court is convened this morning in Case
4  No. 03-CR-023. This is encaptioned the United States of
5  America vs. Scott Lee Kimball. This matter is continued from
6  October 29, 2004. The prior hearing was closed. Is there a
7  motion to close this hearing?

8       *MR. TAYLOR:* Yes, your Honor, there is.

9       *THE COURT:* Any objection?

10      *MR. EICHNER:* None.

11      *THE COURT:* Then those who do not have business before
12 this court in this matter shall be excluded from this hearing.

13      Ms. Nelson, please reflect in the minutes that the
14 hearing is "closed," rather than "sealed," and lock the door.

15      *THE COURTROOM DEPUTY:* Okay.

16      *THE COURT:* All right. As I indicated, this matter
17 was continued from October 29, 2004. It concerns the
18 Government's motion regarding supervised release.

19      *MR. TAYLOR:* Good morning, your Honor.

20      Your Honor, we are here on the Government's
21 application to allow Mr. Kimball, the supervised releasee, to
22 work as a confidential informant for the Federal Bureau of
23 Investigation and the Department of Justice.

24      We're not here asking for an open check. We
25 understand that this request is in derogation of the probation

1  department's standard policy.  We understand it is not
2  something that's frequently sought.  We're here only because,
3  your Honor, we are attempting to solve what we believe is a
4  completed offense.  We are asking really only for a period of
5  about 60 days for Mr. Kimball to do this.  The point is to
6  solve what we believe is a homicide.
7         At this point, it's a missing person, a woman that has
8  disappeared, a woman that we have evidence was knowledgeable of
9  drug-trafficking operations that resulted in a large indictment
10 in the District of Colorado.  We are not asking that
11 Mr. Kimball be permitted to work in an ongoing investigation,
12 investigating ongoing crime.  We're not asking that he be
13 permitted to participate in controlled transactions.  We're
14 only asking that he be allowed to be equipped with electronic
15 monitoring equipment, engaged in conversations with people we
16 believe are either witnesses, subjects, or targets of that
17 homicide investigation.
18         And, your Honor, I believe even if we were asking for
19 a longer period of time, as a practical matter, it probably
20 couldn't happen because I believe Mr. Kimball is going to be
21 appearing in the State of Montana in early to mid January,
22 which will cap the 60-day period or so that we are asking for
23 his cooperation and for the Court's indulgence.
24         *THE COURT:*  Counsel, let me get you to enter your
25 appearance.

1    *MR. TAYLOR:* I apologize, your Honor. William Taylor,
2  Assistant U.S. Attorney, for the United States of America.
3  Present with me is Carl Schlaff, Special Agent for the Federal
4  Bureau of Investigation.
5    *THE COURT:* Thank you. So I understand what you would
6  like to have is an order authorizing Mr. Kimball to be equipped
7  for an electronic monitoring device and communicate with
8  individuals who you designate during the next 60-day period.
9    *MR. TAYLOR:* Yes, your Honor, and exempting him from
10 the standard conditions of release.
11   *THE COURT:* Obviously, it would be exempting him,
12 because the conditions prohibit that.
13   *MR. TAYLOR:* I believe that's correct, your Honor; but
14 I wanted to be absolutely clear on that.
15   *THE COURT:* All right. Okay. Is there something else
16 you want him to be able to do?
17   *MR. TAYLOR:* No, your Honor. We have a very limited
18 period of time. We have some internal problems we have to deal
19 with, but it's nothing the Court need concern itself with.
20 Thank you.
21   *THE COURT:* All right. Thank you.
22       What's the position of the defendant?
23   *MR. EICHNER:* Kenneth Eichner of the Eichner Law Firm
24 on behalf of Scott Lee Kimball, present today.
25       We have no objection to this, and the defendant wants

1   to cooperate with the Government and help them.
2           *THE COURT:*  What's the position of the probation
3   department?
4           *THE PROBATION OFFICER:*  Like I stated in prior memos
5   to the Court, the probation department is generally opposed to
6   offenders cooperating.  I understand the significance, speaking
7   with Special Agent Schlaff and the U.S. Attorney and the
8   importance of why they're asking for this at this time.
9           *THE COURT:*  Okay.  You understand the importance of
10  it.  What's your position?
11          *THE PROBATION OFFICER:*  For the 60-day period, I would
12  not be opposed to it --
13          *THE COURT:*  All right.
14          *THE PROBATION OFFICER:*  -- at this time.
15          *THE COURT:*  All right.  Thank you.
16          I'm always troubled by these requests.  I'm
17  particularly troubled by this request because this is the
18  subject matter that has been of concern to the Government since
19  before Mr. Kimball was sentenced, which means that this
20  investigation hasn't progressed.  And we're now back a
21  significant time after the sentencing asking to do something
22  that probably was anticipated at that time.
23          *MR. TAYLOR:*  May I respond, your Honor?
24          *THE COURT:*  Please.
25          *MR. TAYLOR:*  Your Honor, I think the investigation has

1  progressed.  And we haven't, of course, gone into a long list
2  of things that the investigation has been accomplishing over
3  the period of time since Mr. Kimball was sentenced.
4       In addition, your Honor, as the Court knows, in
5  situations like this, where serious crime has been committed
6  the receptivity of witnesses, subjects, targets to approaches
7  by people who may be able to get information from them changes
8  over time.  To use the vernacular, suspects get suspicious or
9  "hink up" and won't talk to people.  Suspects don't return
10 telephone calls.
11      For a period of time in this case, things kind of went
12 dark; and a window closed.  A window that had been open at one
13 period of time -- and Mr. Kimball might be able to help us --
14 closed; and we now think that things have ameliorated to such a
15 state that we may be able to reintroduce him and we may be able
16 to get him in a position where he may be able to elicit
17 incriminating statements or at least elicit information which
18 will help us locate the body of the victim that we think
19 exists.
20      And frankly, your Honor, that is our principal
21 purpose, because we're losing forensic evidence every day that
22 that body is not discovered.
23      *THE COURT:*  I understand.  But the first time this was
24 brought to my attention was almost a year ago.
25      *MR. TAYLOR:*  I understand, your Honor.

1    In addition, Mr. Kimball has had certain problems of
2 his own.  I don't think there has been any lack of diligence on
3 the Government's part in pursuing this homicide investigation.
4 Really, I think it has been circumstances beyond our control.
5    *THE COURT:*  And why do you reasonably think that
6 you're going to be able to able to accomplish the location or
7 learn of the location of this person's body in the next 60
8 days?  What makes you think the 60 days going to work where
9 nothing has worked before?
10    *MR. TAYLOR:*  I think we're going to know, your Honor,
11 in the next 60 days whether or not there is any likelihood that
12 Mr. Kimball is going to be of any use to us.  The people that
13 we would anticipate putting Mr. Kimball in communication with
14 may not be receptive at all, and we may know substantially
15 sooner than 60 days whether or not it's going to be end up
16 being a dry hole.
17    If Mr. Kimball is able to communicate with them, we
18 think that we're going to know pretty quickly whether they're
19 going to be able to willing to talk to him about this subject.
20    The other thing, your Honor, as a practical matter,
21 given the charges that he faces in Montana, 60 days is about
22 the period of time we have to work with.  My understanding,
23 speaking to Mr. Phillips prior to this hearing, is that he has
24 to go to Montana and answer charges up there, and he is likely
25 to be incarcerated after that point starting sometime in

1  January.  So as a practical matter, I need not ask for more
2  than 60 days.  And I think I'm going to find out substantially
3  sooner than that whether or not there is going to be any
4  utility in this exercise at all.
5         *THE COURT:*  All right.  What will your instructions be
6  to Mr. Kimball?
7         *MR. TAYLOR:*  They'll be the FBI's instructions, your
8  Honor; but I think I can tell you that they will instruct him
9  according to standard Federal Bureau of Investigation
10 procedures how to make these contacts, whether it be by
11 telephone, whether it will be in person with him wearing
12 electronic monitoring equipment.  They will control the time
13 place and circumstances of communications with these
14 individuals.  He's going to be on a very tight leash, your
15 Honor, frankly, quite apart from public safety, quite apart
16 from the concerns of rehabilitation, which are integral to
17 supervised release.
18        *THE COURT:*  Well, how do I know --
19        *MR. TAYLOR:*  And we have to corroborate what the man
20 says, given his criminal history.
21        *THE COURT:*  How do I know this will not involve him
22 with criminal associates?
23        *MR. TAYLOR:*  I think in every situation, to be
24 perfectly candid, it is a bit of a crap shoot.  He is going to
25 be involved with criminal associates.  The people he is going

1  to be talking to are either charged, under suspicion, about to
2  plead guilty, cooperating with the Government on unrelated
3  subjects. They are the criminal element.
4      And, your Honor, I think the Court should only expect
5  that, given the nature of the crime we're investigating. It's
6  a homicide investigation stemming from a drug trafficking
7  investigation. That said, if we get a whiff that he is
8  involved in new criminal activity, in ongoing criminal activity
9  by those people, we'll pull him out.
10     *THE COURT:* How many people are you going to have him
11 talk to?
12     *MR. TAYLOR:* Sorry, your Honor?
13     *THE COURT:* How many people are you going to have him
14 talk to?
15     *MR. TAYLOR:* I'm not sure I can tell you. It's less
16 than 10, probably more like half dozen at the most.
17     *THE COURT:* All right. I'll grant the Government's
18 request, but this is your shot.
19     *MR. TAYLOR:* We appreciate that.
20     *THE COURT:* And your only shot.
21     *MR. TAYLOR:* We understand that, your Honor.
22     *THE COURT:* This has been a longstanding
23 investigation. Mr. Kimball obviously cannot close his
24 association with these individuals until you complete this.
25 And he needs to get on with the rest of his life. He needs to

 1  focus on the rehabilitative aspects of the sentence that was
 2  imposed, and he can't do that until this is finished.  So it's
 3  time to finish this up.
 4           I find that there are circumstances here both because
 5  of the limited duration in time, the specificity in the
 6  sponsoring agency's overview of the proposed utilization, and
 7  the importance of the investigation that the condition in the
 8  supervised release that bars cooperation with law enforcement
 9  agencies will be lifted under strict provision.
10           Those provisions are contained, as everyone is fully
11  aware, in the suggested procedures for management of federal
12  probation and pretrial services officers of defendants and
13  offenders who are confidential informants.  But let me specify
14  what those requirements are:
15           The FBI will provide a confidential statement to the
16  probation officer of the names of the individuals and of the
17  dates and times where contact will be made and the means of
18  contact.  The involvement of Mr. Kimball in this investigation
19  is limited to a 60-day time period and limited to the specified
20  individuals, times, and places that the FBI provides to the
21  probation officer.  The information provided to the probation
22  officer necessarily will remain confidential.
23           Mr. Kimball, I'm advising you that you're not to
24  participate in any criminal activity; and if do you participate
25  in any criminal activity, you will be held accountable

1   therefore.  There is no free get-out-of-jail card here.

2               *THE DEFENDANT:*  Yes, your Honor.

3               *THE COURT:*  And "criminal activity" is defined as any

4   activity that would constitute a crime under state or federal

5   law as if engaged in by a private person acting without

6   authority or approval of a law enforcement agency.

7               The FBI shall take all reasonable, necessary, and

8   possible precautions to ensure the safety of both Mr. Kimball

9   and the community.  And during the period of Mr. Kimball's

10  assistance, the FBI shall be responsible for bringing to the

11  attention of the Court either directly or through the probation

12  office any violations of the conditions of release or any

13  changes in the conditions of the original agreement with the

14  offender, including any unauthorized criminal activity.

15              In addition, the FBI will be responsible for advising

16  the probation officer whenever the FBI believes that the

17  probation officer is in danger due to the activity of the

18  offender.

19              As I said, the time period for this involvement is

20  limited to 60 days.  That will run from today's date.

21              These conditions and the Court's approval must be

22  included in a written court order which the probation

23  department will prepare and which will be sealed.

24              Is there anything further?

25              *MR. EICHNER:*  Not on behalf of the defense.

1 *MR. TAYLOR:* Nor for the Government, your Honor.
2 Thank you.
3 *THE COURT:* And thank you. That will conclude this
4 matter. And if our probation officer will get me an order,
5 we'll get it signed and sealed.
6 Thank you. We'll stand in recess.
7 (Recess at 8:20 a.m.)
8 \* \* \* \* \*

## REPORTER'S CERTIFICATE

10 I certify that the foregoing is a correct transcript from
11 the record of proceedings in the above-entitled matter. Dated
12 at Denver, Colorado, this 5th day of May, 2008.

*S/Paul A. Zuckerman*
Paul A. Zuckerman