```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLORADO

Criminal Action No. 03-CR-00023-MSK

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

SCOTT LEE KIMBALL,

     Defendant.
_____

                       REPORTER'S TRANSCRIPT
                (Hearing Re Supervised Release Violation)
_____
```

Proceedings before the HONORABLE MARCIA S. KRIEGER, Judge, United States District Court for the District of Colorado, commencing at 4:04 p..m., on the 22nd day of May, 2006, in Courtroom A901, United States Courthouse, Denver, Colorado.

**APPEARANCES**

WILLIAM TAYLOR, Assistant U.S. Attorney, 1225 17th Street, Suite 700, Denver, Colorado, 80202, appearing for the plaintiff.

ROBERT BERGER, Attorney at Law, 1408 Oneida Street, Denver, Colorado, 80220-2949, appearing for the defendant.

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Paul Zuckerman, 1929 Stout Street, P.O. Box 3563, Denver, Colorado, 80294, (303) 629-9285

1     (In open court at 4:04 p.m.)

2         *THE COURT:*  Please be seated.

3         The Court is convened this afternoon in Case

4  No. 03-cr-23.  This is encaptioned the United States of America

5  vs. Scott Lee Kimball.  The matter is set down on a supervised

6  release violation.

7         Could I have entries of appearance, please.

8         *MR. TAYLOR:*  Good afternoon, your Honor.  William

9  Taylor, Assistant United States Attorney, for the Government.

10         *THE COURT:*  Good afternoon.

11         *MR. BERGER:*  Robert Berger for Mr. Kimball; and he

12  appears in custody, your Honor.

13         *THE COURT:*  Thank you.  Good afternoon.

14         As I indicated, we are here today on a supervised

15  release violation report and a request by the Government that

16  Mr. Kimball's supervised release be revoked and that he be

17  sentenced to a term of imprisonment.

18         This is based upon three alleged violations, all three

19  Class C violations.

20         Let me begin by asking Mr. Berger:  Have you and your

21  client received and had adequate opportunity to review the

22  violation report dated May 12, 2006, and the revised violation

23  report dated May 22, 2006?

24         *MR. BERGER:*  We have, your Honor.

25         *THE COURT:*  And has the Government had adequate time

```
 1  to review that as well?
 2          MR. TAYLOR:  Yes, your Honor.
 3          THE COURT:  Are there any additions or corrections to
 4  the report or the addendum?
 5          MR. TAYLOR:  Not by the Government.  Thank you, your
 6  Honor.
 7          MR. BERGER:  The report as revised is accurate, and so
 8  we have no corrections or additions to make to it.
 9          THE COURT:  Thank you.  What is the defendant's
10  position with regard to the three alleged violations?
11          MR. BERGER:  He would admit to those violations, your
12  Honor.
13          THE COURT:  Failure to report to the probation officer
14  as directed, the defendant admits that?
15          MR. BERGER:  Yes.
16          THE COURT:  Failure to notify the officer of change in
17  residence?
18          MR. BERGER:  Yes, your Honor.
19          THE COURT:  And also leaving the district without
20  permission?
21          MR. BERGER:  Yes.
22          THE COURT:  All right.  Then with an admission of
23  those charges, the question is what is the appropriate
24  sentence.  What's the Government's position?
25          MR. TAYLOR:  Your Honor, the Government believes that
```

1   the defendant should be sentenced to a period of imprisonment
2   of 12 months, top of the guideline range.  Your Honor, I'm
3   making that recommendation in exchange for his admissions.  I
4   think it is appropriate based on the defendant's history,
5   criminal history, based on the fact that the defendant was
6   given a break by the Court pursuant to a 5K motion, and based
7   on the facts surrounding the defendant's flight from the
8   district and recapture in California.  I think that is
9   appropriate.  And I would ask that the Court put him back on
10  supervised release for the full number of months after he is
11  released.
12          *THE COURT:*  I think the only allowable time is 21
13  months.
14          *MR. TAYLOR:*  I think that's right, your Honor.
15  Actually it's -- actually it's 24 months, I think, your Honor,
16  if the Court imposes 12 months.
17          *THE PROBATION OFFICER:*  If it's a 12-month sentence.
18  It's three years minus any term of imprisonment.
19          *THE COURT:*  All right.  Thank you.
20          And what's the defendant's position, Mr. Berger?
21          *MR. BERGER:*  Your Honor, we would ask the Court to
22  impose the shortest jail sentence possible to be followed by
23  putting Mr. Kimball back on an extended term of supervised
24  release, which I guess could be up to three years minus
25  whatever the shortest term of imprisonment is.

1          And, your Honor, I can -- You know, I was not
2    Mr. Kimball's counsel at the sentencing and the other
3    proceedings; but I think I know what went on here from reading
4    through the file and talking with him and the probation
5    officer.  Mr. Kimball was placed on supervised release on
6    December 1, 2003.  He didn't have a problem on supervised
7    release until the end of November, 2005.  So he made it almost
8    two full years with no problems.
9          In addition to that, your Honor, Mr. Kimball's case
10   took a long time to get from the beginning to the sentencing
11   hearing on December 1, 2003, and he was actually on pretrial
12   release during -- he tells me a year before that, being
13   supervised by the -- pretrial services.
14         Prior to that, he was incarcerated.  The judgment
15   shows, I believe, 412 days presentence confinement; so the case
16   took a long time.  But the point of all this is that
17   Mr. Kimball made it about three years on supervised release or
18   pretrial supervision without violations and without problems.
19         The Court ordered that he continue his mental health
20   treatment at the time of sentencing.  And what that treatment
21   turned out to be was simply taking medication.  He wasn't in
22   group therapy or individual psychotherapy, and it appears that
23   he wasn't monitored very closely by the doctor that prescribed
24   him the medication.  And he can speak to what happened to him;
25   but whatever the story is, the Court knows that he has mental

1  health problems, and they were supposed to be getting addressed
2  during this time.  And it appears that it worked for three
3  years, and then it stopped working.
4       And Mr. Kimball did this stuff at the end of November,
5  where he left town and didn't get -- didn't report when he was
6  supposed to.  And then he ran away on January 13.  And that is
7  what leads to Counts 1 and 2 that he just admitted to.  He ran
8  off from his residence and went out to California, where he was
9  ultimately found and apprehended.
10       So what I see here, your Honor, is a man who needs
11 supervision and more supervision than he had before and mental
12 health treatment and probably more mental health treatment than
13 he had in the past.  And we've talked about this quite a bit,
14 your Honor.  And I would ask the Court that whatever term of
15 jail, confinement there is be followed by supervised release
16 with a condition that Mr. Kimball start off in a halfway house
17 so that he really has a lot of supervision at the beginning, at
18 least -- and maybe he can make it this time -- and that a
19 condition be that he really have mental health treatment that
20 gets monitored a little more closely than it did in the past.
21       So I guess if there is a 6-to-12-month range, then as
22 a policy statement under the guidelines, the Court isn't really
23 bound by that; but I suppose 6 months would be what we would
24 ask for, if the Court is inclined to follow the policy
25 statement in the guidelines, to be followed by this term of

1  supervised release for 30 months.
2    *THE COURT:*  Thank you.
3    *MR. BERGER:*  Thank you.
4    *THE COURT:*  Anything else for the Government?
5    *MR. TAYLOR:*  No, thank you, your Honor.
6    *THE COURT:*  Mr. Kimball, is there anything you want me
7  to know?
8    *THE DEFENDANT:*  Your Honor, I take responsibility for
9  my actions.  Thank you.
10    And I would like to get whatever help I can to keep me
11  from coming back to this -- this situation, this cycle that I'm
12  in.  It's not good for myself, it's not good for my family; so
13  I'm not going to sit here and lie to you and make excuses.  I
14  had a lot going on in my life, and my medication was switched,
15  and I didn't have a chance to get it properly monitored.  I was
16  dealing with a custody issue with my children, a separation and
17  divorce from my wife.  I had problems with my business and my
18  job and my family.  I made bad choices.
19    And that's all I have to say, your Honor.
20    *THE COURT:*  Thank you.
21    I'm going to announce sentence I intend to impose.  Of
22  course, Counsel, you'll have an opportunity to make any further
23  legal argument you'd like to make before I actually impose
24  sentence here.
25    This is before the Court on a request for revocation

1  of supervised release due to three supervised release
2  violations.  The original offense was premised upon conviction
3  of violation of 18 U.S.C. Section 513(a), making, uttering, and
4  possessing a counterfeited security.  Sentence was imposed with
5  regard to that conviction on a downward departure.  The
6  original sentencing range guideline provision was 6 to 12
7  months of incarceration; and on a 5K1.1 motion, the Court
8  departed downward to 3 months of incarceration served
9  concurrently for the two counts for which the defendant was
10 convicted.
11         This matter is before the Court for violation of the
12 conditions of supervised release which were imposed for a 3-
13 year period.  The violations that were alleged here were a
14 failure to report to the probation officer as directed on
15 January 23 and January 27; grade C violation, to which the
16 defendant has admitted; a failure to notify the officer of a
17 change of residence on January 13, 2006, also a Grade C
18 violation to which the defendant has admitted, and leaving the
19 district without permission on November 18, 2005, which also is
20 a grade C violation, to which the defendant has admitted.
21         The criminal history category here for Mr. Kimball is
22 category IV, and the presumptive guideline range is 6 to 12
23 months of incarceration followed by three years less any time
24 imposed upon revocation for supervised release.
25         In determining what the appropriate penalty should be

1  for violation of supervised release, the Court is instructed by
2  the provisions of 18 U.S.C. Section 3583(e).  It requires the
3  Court to consider the factors set forth in 18 U.S.C. Section
4  3553(a)(1), (a)(2)(B), (a)(2)(C), (a)2(D), (a)(4), (a)(5),
5  (a)(6), and (a)(7).  The Court has considered those particular
6  provisions.  Many of those are the same provisions which are
7  applicable at the time that a sentence is originally imposed.
8             The probation department has requested incarceration
9  of 15 months, the Government has requested incarceration of 12
10 months, and the defendant requests no longer than 6 months of
11 incarceration and requests that that occur at a halfway house.
12            In considering what is the appropriate penalty here,
13 the Court considers the timing of the violations, the nature of
14 the violations, the explanation that has been provided by
15 defendant's counsel related to mental health treatment and
16 perhaps the lack of effectiveness of prescription drugs to
17 assist the defendant and considers such other information as
18 may be important in evaluating and considering the various
19 factors that are statutorily referred to.
20            What strikes me here are several things.  First of
21 all, the violations that have occurred here have to some degree
22 been clustered over a relatively short period of time beginning
23 in November of 2005, and culminating at the end of January,
24 2006.  The violations are attributed in part by the defendant
25 to his marital difficulties, stress in his business, and

1  perhaps the lack of effectiveness in the mental health
2  treatment that he was receiving; but what concerns me is there
3  is a level of deception that is similar to the kind of
4  deception we saw on the original conviction.  The original
5  conviction was making, uttering, and possessing a counterfeited
6  security.  That's fraud.  And the circumstances surrounding
7  these violations have to do with, in November at least, false
8  statements and an overt attempt to hide behavior.
9        What concerns me is the statement by the probation
10  officer that the defendant not only left the district without
11  permission but went to some lengths to hide the fact he was
12  leaving the district without permission and after the fact made
13  representations to the probation officer that he had not left
14  the district without permission, indeed, providing two receipts
15  from stores in the Denver area dated November 21, 2005, to try
16  to convince me that he was actually in the Denver area.  It was
17  after the defendant left the probation officer's office that
18  the officer contacted the Bureau of Immigration and Customs at
19  Denver International Airport, who confirmed that the defendant
20  had purchased a round-trip airline ticket leaving Orange
21  County, California, on November 21, 2005, in route to Denver,
22  Colorado.  The officer confirmed that the defendant was on the
23  return flight from Denver to Orange County, California, which
24  left Denver on November 22.
25        The officer goes on and says that the officer was not

 1  able to confront the defendant regarding the unauthorized
 2  travel out of the district until December 28, due to his
 3  involvement in a car accident earlier in the month.  And when
 4  he reported to the probation office on December 28, he
 5  ultimately admitted to traveling during Thanksgiving week to
 6  his brother's residence in California.  He said he made an
 7  impulsive decision to travel without first getting permission
 8  to travel.  He noted that on his November, 2005 monthly
 9  supervision report that he had submitted on December 28, 2005,
10  that had he travelled out of the district without permission.
11         Now, what concerns me particularly about this episode
12  is one could characterize it as impulsive.  One could also
13  characterize it as fundamentally dishonest.  It's one thing to
14  move and not advise the probation officer of where you're
15  going.  It's another thing to try to mislead the probation
16  officer into believing that you have not travelled when you,
17  indeed, did travel outside the district without permission.
18         I also am concerned that the defendant is under
19  investigation by the Lafayette Police Department for new felony
20  charges concerning counts of check fraud, seven counts of
21  theft, $500 to $1,500, and two counts of insurance fraud.
22         These charges apparently arise from allegations that
23  the defendant intercepted mail from a doctor who occupies an
24  office in the same building the defendant's mother operates --
25  where the defendant's mother operates an insurance company.

 1  And according to the investigating officer, the defendant
 2  allegedly obtained information regarding the doctor's bank
 3  accounts and misappropriated approximately $83,000 from the
 4  accounts.
 5       Now, these are simply charges, and they are not the
 6  basis of a violation; but they do give some context to the
 7  Court's concerns about fraudulent behavior.
 8       Under these circumstances, I want to be sure that
 9  Mr. Kimball receives the kind of supervision he needs and the
10  medical care he needs; but I am cognizant of the Court's
11  obligation to protect society from future violations of the law
12  by Mr. Kimball.  I'm cognizant of the obligation under 3553(a)
13  to impose a sentence that promotes respect for the law.  And if
14  every defendant were able to say to me, "The only reason I
15  broke the rules, violated my conditions of supervision, or
16  broke the law is because my medication wasn't working or I had
17  a number of stressors in my life," all of which may be true,
18  then no one would be held accountable for their behavior under
19  any circumstances.
20       I do not think this is as simple as the probation
21  department would recommend of simply imposing a significant
22  incarceration period of 15 months, nor do I think it is as
23  simple as the defense would argue that all Mr. Kimball needs is
24  supervision and it can be best accomplished in a halfway house.
25       I think we are looking at a situation that needs a

1  number of different aspects addressed over a graduated process;
2  and therefore, I intend to impose the following sentence:
3           10 months in jail, 6 months in a halfway house as part
4  of supervised release, which runs for a period of 26 months.
5  During the halfway-house-supervision period and during the
6  period of time that Mr. Kimball is on supervised release, he
7  would participate in a program of mental health treatment as
8  directed by the probation officer until and unless he is
9  released from the program by the probation officer.  In
10 addition, he would remain medically compliant with any
11 prescribed medications.  And the probation officer would be
12 authorized to release psychological reports and/or the
13 presentence report and the violation report to the treating
14 agency or professional in order to ensure continuity of
15 treatment.
16          Is there any further argument for the Government?
17          *MR. TAYLOR:*  No, thank you, your Honor.
18          *THE COURT:*  For the defense?
19          *MR. BERGER:*  Can I have one moment?
20     (Discussion off the record between defendant and
21 Mr. Berger.)
22          *MR. BERGER:*  No questions, nothing to add.  Thank you.
23          *THE COURT:*  Then based upon the previously made
24 findings and supplementing those, I find that the defendant has
25 violated the conditions of supervised release as alleged in the

```
 1  probation officer's petition.
 2          It is ordered and adjudged that the supervised release
 3  is revoked.
 4          The defendant is sentenced to 10 months of
 5  incarceration, 26 months of supervised release, 6 months of
 6  which will be spent in a halfway house.  During the period of
 7  supervised release, all prior standard and special conditions
 8  will apply.
 9          In addition, the defendant will participate in a
10  program of mental health treatment as directed by the probation
11  officer until such time as he's released from the program by
12  the probation officer.  He will remain medically compliant with
13  all -- in taking all prescribed medications.  And the probation
14  officer is authorized to release psychological reports and the
15  presentence report and the violation reports to the treating
16  agency or professional for continuity of treatment.
17          Mr. Kimball, I advise you of your right to appeal this
18  sentence.  If you desire to appeal, a notice of appeal must be
19  filed with the Clerk of the Court within ten days after entry
20  of the judgment, or you lose your right to appeal.  Ordinarily,
21  Mr. Berger would file the notice of appeal for you; but if he
22  is unable to or unwilling to and you so request, I will direct
23  the Clerk of the Court to immediately prepare and file a notice
24  of appeal on your behalf.
25          Anything further to bring before the Court?
```

1       *MR. TAYLOR:*  No, thank you, your Honor.

2       *MR. BERGER:*  No, thank you, your Honor.

3       *THE COURT:*  Then the defendant will be remanded to the

4 United States Marshal.  And I would ask after we recesses here

5 to see counsel and the probation officer in chambers.

6       We'll stand in recess.

7    (Recess at 4:33 p.m.)

8            \* \* \* \* \*

9            **REPORTER'S CERTIFICATE**

10   I certify that the foregoing is a correct transcript from

11 the record of proceedings in the above-entitled matter.  Dated

12 at Denver, Colorado, this 23rd day of May, 2008.

13

14                               *S/Paul A. Zuckerman*
                                  Paul A. Zuckerman

15

16

17

18

19

20

21

22

23

24

25